UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------------X

RUTH CHARLES,

                Plaintiff,

    v.

COUNTY OF LYCOMING, PENNSYLVANIA;
RYAN GARDNER, *individually*;
and LISA DIMASSIMO, *individually*,

                Defendants.

Civil Action No.

**COMPLAINT**

Plaintiff Demands a Trial by Jury

---------------------------------------------------------------------X

Plaintiff, RUTH CHARLES, as and for her Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")) and 42 U.S.C. § 1981, and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and harassed on the basis of her race (and

subjected to a hostile work environment), and retaliated against on the basis of her reporting of the same.[1]

## JURISDICTION AND VENUE

2. This action involves questions of federal law under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

3. This court will have supplemental jurisdiction over the forthcoming state causes of action, as they arise out of the same nucleus of operative fact.

4. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Lycoming, Commonwealth of Pennsylvania, within the Middle District of Pennsylvania. Additionally, the events at issue took place in Lycoming County, Pennsylvania within the Middle District of Pennsylvania.

5. Around August 7, 2020, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") against all Defendants as set forth herein.

---

[1] As Plaintiff's analogous claims under the Pennsylvania Human Relations Act ("PHRA") are not yet ripe, Plaintiff reserves the right to amend this Complaint to add such claims once they are available to her.

6. Around February 23, 2021, the EEOC issued Plaintiff her Notice of Right to Sue.

7. This action is being commenced within 90 days of receipt of the EEOC Notice of Right to Sue.

## PARTIES

8. RUTH CHARLES (hereinafter referred to as "Plaintiff" and/or "CHARLES") is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of her race, subjected to a hostile work environment, and retaliated against for complaining about and reporting the discrimination.

9. Plaintiff CHARLES is an individual female of Asian descent who resides in the County of Lycoming within the Commonwealth of Pennsylvania.

10. At all times material, Defendant COUNTY OF LYCOMING, PENNSYLVANIA (hereinafter referred to as Defendant and/or "LYCOMING") was and is a county within the Commonwealth of Pennsylvania.

11. At all times material, Defendant LYCOMING operated and continues to operate a courthouse located at 48 W. Third Street, Williamsport, PA 17701.

12. At all times material since January 2020, Defendant RYAN GARDNER (hereinafter referred to as "Defendant" and/or "GARDNER") was employed by Defendant LYCOMING as District Attorney.

13. At all times material, Defendant GARDNER held supervisory authority over Plaintiff.

14. At all times material, Defendant LISA DIMASSIMO (hereinafter referred to as "DIMASSIMO") was and is employed by Defendant LYCOMING as a Clerical Supervisor.

15. At all times material since January 2020, Defendant DIMASSIMO held direct supervisory authority over Plaintiff.

## MATERIAL FACTS

16. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

17. Around April 2013, Plaintiff began working as a Clerk for Defendant LYCOMING, initially working for LYCOMING's Tax Assessment office

18. Around November 2019, desiring to change positions, Plaintiff applied for and received a job as a "Clerk III" within Defendants' District Attorney's office.

19. Since beginning her new position in November 2019 and through her termination, Plaintiff was Defendants' only Asian employee in the courthouse.

20. Soon after Plaintiff began working in the District Attorney's office, Plaintiff's white co-worker Karen Chianelli (hereinafter "Chianelli") began making rude comments to Plaintiff and generally treating her poorly without justification.  When Plaintiff brought this up to Defendant DIMASSIMO, DIMASSIMO dismissed her concerns, stating that "it's just Karen" and "not to worry."

21. Around January 2020, Defendant GARDNER took office as the new District Attorney of Lycoming County.

22. Very soon after, Defendant DIMASSIMO was promoted from Clerk to Clerical Supervisor, a position in which she directly supervised Plaintiff.

23. Around April 6, 2020, Chianelli walked into Plaintiff's work area and began loudly talking about the ongoing COVID-19 pandemic, making blatantly offensive and discriminatory comments, yelling that she "**can't stand the chinks**," that **"I can't believe these chinks"** and further complaining that "**they [persons of Asian descent] just want money back for masks**." Chianelli stared directly at Plaintiff when making these comments.

24. Plaintiff was horrified and offended by the harassing remarks that Chianelli blatantly directed at her, and accordingly reported the matter via email to DIMASSIMO.

25. In response, DIMASSIMO stated that the matter would "added to [Chianelli's] file" and that she would speak to Human Resources, and further had notified Defendant GARDNER of the incident.

26. Plaintiff was so shocked and offended by the blatantly racist comments that she was frequently crying throughout the same day.

27. Later that day, DIMASSIMO held a meeting with both Plaintiff and Chianelli.  During the meeting, in which Plaintiff explained how offended she was by Chianelli's comments, Chianelli refused to acknowledge that she had said anything discriminatory, stating to Plaintiff "Well, I thought you were American."  In response, Plaintiff stated that the words she had used were offensive and racist against her.

28. Indeed, DIMASSIMO even acknowledged in a follow-up email to Plaintiff that Chianelli refused to acknowledge that inappropriateness and severity of her behavior.

29. Upon information and belief, Defendants failed to discipline Chianelli or take otherwise appropriate action in response to the harassment.

30. Approximately one to two weeks later, around April 13, DIMASSIMO called Plaintiff to her office to let her know that Defendants were moving Chianelli to a workspace directly next to her, and wanted to know whether that would be an "issue" for Plaintiff. In response, Plaintiff stated that it would, and asked if she could move further away from that workspace.

31. Despite Plaintiff's clear discomfort with working directly next to a coworker who had very recently made extremely racist comments to her, Defendants ignored Plaintiff's concerns, with DIMASSIMO stating to her "can't you just deal with it?"

32. Not wanting to cause problems and fearing retaliation for pushing further, Plaintiff did not argue with DIMASSIMO, but stated that she would not tolerate any further discriminatory remarks from Chianelli.

33. Approximately one week later, around April 20, DIMASSIMO came over to Plaintiff and Chianelli's work area and not only demanded to know if she "still had a problem" with Chianelli, but also stated that Chianelli "didn't think [Plaintiff] was over the 'chink incident.'"

34. Accordingly, Defendants treated Plaintiff as the employee who was allegedly causing problems simply for opposing and reporting offensive and harassing discriminatory comments.

35. Furthermore, Plaintiff was again disturbed and offended by DIMASSIMO's casual use of the work "chink" towards her, as there was no legitimate reason to use the word in discussing the matter with Plaintiff.

36. That same week, Defendants called Plaintiff into the office on her off day due to alleged staffing issues.

37. That day, while Plaintiff was working, ADA Mike Sullivan (hereinafter "Sullivan") approached her and began asking her questions about an accelerated rehabilitative disposition ("ARD") matter that a defense attorney had asked him about. Plaintiff attempted to help Sullivan to the best of her ability, but did not feel comfortable providing information that bordered on legal advice as she was not an attorney, which she explained to Sullivan.

38. Later that day, DIMASSIMO called Plaintiff into her office and demanded to know "what [was] wrong." In response, Plaintiff admitted that she had concerns about issues with favoritism in the office relating to who was and was not called into work, after which DIMASSIMO appeared to become angry.

39. Following that conversation, DIMASSIMO then began berating Plaintiff about her earlier conversation with Sullivan, loudly accusing her of refusing to help him, "giving attitude" to the ADAs in the office, and not helping other when asked. In response, Plaintiff stated that that was not accurate, and

that she was hurt by the accusation. DIMASSIMO then sent Plaintiff home for the day.

40. The next day (May 1), when Plaintiff returned to the office after again being called in to work on a day in which she was not initially scheduled, DIMASSIMO sent her a text message towards the end of the day requesting that Plaintiff come to her office. When Plaintiff arrived, DIMASSIMO was there with GARDNER, as well as ADA Martin Wade and LYCOMING's Head of Probation.

41. GARDNER then began berating Plaintiff about her conversation with Sullivan the day prior, and accused Plaintiff of perpetrating "the worst case of insubordination [that he had] ever seen in 30 years of being an attorney." GARDNER also accused Plaintiff of stating that it was "bullshit that [she] had to come in [to work]," which Plaintiff never stated and categorically denied.  When Plaintiff tried to answer GARDNER's accusations, DIMASSIMO began yelling at her and refused to let her finish her explanation.

42. GARDNER then informed Plaintiff that she was "insubordinate" and that it was "grounds for termination," ordered her to hand in her office key and badge, and had her escorted out of the office by the Head of Probation.

43. Plaintiff's termination was blatantly in retaliation for her reporting of and opposition to the harassment directed at her on the basis of her race, as she had in no way been insubordinate towards anyone in her office.

44. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

45. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

46. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

47. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

48. The above are just some examples of some of the discrimination and harassment to which Defendants subjected Plaintiff.

49. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

50. Plaintiff claims alternatively (in the event that Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Defendants GARDNER or DIMASSIMO)

51. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

52. Title VII of the Civil Rights Act of 1964 states in relevant parts as follows: § 2000e-2. *[Section 703]* (a) Employer practices: It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

53. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e *et seq.*, by discriminating against Plaintiff because of her race and subjecting Plaintiff to a hostile work environment.

54. As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (Not Against Defendants GARDNER or DIMASSIMO)

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

56. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

    "(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

57. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions and/or privileges of her employment because of her opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. § 1981

58. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

59. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined: For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

60. Plaintiff, as a person of Asian descent, was discriminated against by Defendants and subjected to a hostile work environment because of her race as provided under 42 U.S.C. § 1981 and has suffered damages as set forth herein.

**AS A FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER 42 U.S.C. § 1981**

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined: For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

63. Plaintiff, as a person of Asian descent, was retaliated against by Defendants because of her reporting of discrimination and harassment in violation of 42 U.S.C. § 1981 and has suffered damages as set forth herein.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest,

including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: May 14, 2021

**DEREK SMITH LAW GROUP PLLC**
*Attorneys for Plaintiff Ruth Charles*

By: /s/ Nathaniel N. Peckham
Nathaniel N. Peckham, Esq.
State Bar ID No. PA325064
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Tel. (215) 391-4790
Fax: (215) 893-5288
nathaniel@dereksmithlaw.com
